**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:17-cv-22967-FAM**

SETH F. MASSON,
individually and on behalf of all
others similarly situated,                                    **CLASS ACTION**

      Plaintiff,                                    **JURY TRIAL DEMANDED**

v.

TALLAHASSEE DODGE
CHRYSLER JEEP, LLC
a Florida limited liability company,

      Defendant.
_____/

**PLAINTIFF'S UNOPPOSED AMENDED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Seth F. Masson, on behalf of himself and a class of similarly situated persons, with the consent of Defendant, Tallahassee Dodge Chrysler Jeep, LLC ("TDCJ"), respectfully requests entry of an order granting preliminary approval of the class action settlement set forth in the Parties' Settlement Agreement ("Settlement Agreement" or "Agreement"), certifying a class for settlement purposes, and providing for issuance of Notice to the Settlement Class.[1]

I.    **INTRODUCTION**

After hard-fought litigation and with the help of well-respected mediator, Rodney Max, the Parties reached the proposed Settlement between Plaintiff and TDCJ. The Settlement Agreement establishes an $850,000.00 Settlement Fund, which will also be used to the pay the costs of Settlement Administration and Notice Administration. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, contentious and costly litigation centered on unsettled legal questions.

_____

[1] The Agreement is attached as *Exhibit A*. All capitalized terms used herein have the same definitions as those defined in the Agreement.

This motion seeks the entry of an order providing for, among other things:

1. Preliminary Approval of the Settlement;

2. Preliminary certification of a Settlement Class and appointment of the Plaintiff as Class Representative and Plaintiff's counsel as Class Counsel;

3. Approval of the Settlement Administrator, Notice Administrator and Escrow Agent;

4. Approval of the Notice program describing:

   a. The Settlement and the Settlement Class members' rights with respect to the Settlement;

   b. The proposed Release of claims;

   c. Class Counsel's request for attorneys' fees and expenses, as well a Service Award for the Class Representative; and

   d. The procedure for opting-out of or objecting to the Settlement

5. Approval of the Claims process; and

6. The scheduling of a Final Approval Hearing to consider Final Approval of the Settlement.

The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. *See* Declaration of Jeff Ostrow ¶ 2, attached hereto as *Exhibit B*. First, it provides relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain, especially given TDCJ's ability and willingness to continue its vigorous defense of the case. Second, the Settlement was reached only after first engaging in extensive pre-litigation discovery, formal discovery, and extensive arm's-length negotiations, including a full-day mediation session. Third, the Settlement was not conditioned on any amount of attorneys' fees for Class Counsel or Service Award for Plaintiff, which speaks to the fundamental fairness of the process. Ostrow Decl. ¶ 3.

For all of these reasons, and as further described below, Plaintiff respectfully requests that the Court preliminarily approve the Settlement.

## II.   BACKGROUND

### a. Facts

The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer

consumers greater protection from intrusive telemarketing calls…."[2]  During the period between July 27, 2017 to July 31, 2017, to market its automobile dealership, TDCJ initiated a text message marketing campaign whereas autodialed text messages were sent to Plaintiff and 17,043 other individuals.  Plaintiff alleged that this text message marketing campaign violated the TCPA because the texts were sent to consumers without express written consent.

### b.  Procedural History

On August 4, 2017, Plaintiff initiated this litigation against TDCJ in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1].  After seeking a brief extension of time, [DE #6], TDCJ filed an Answer and Affirmative Defenses. [DE #12].

On September 28, 2017, after conducting a telephonic meet and confer the Parties submitted Joint Scheduling Report. [DE #15].   On October 10, 2017, the Court entered a Scheduling Order and Order Referring Case to Mediation. [DE #18, 19].

Discovery commenced in October 2017.  Class Counsel served written discovery and documents requests and subpoenas for documents and depositions on TDCJ's mobile marketer, BDC Promotions, Inc.

In response, TDJC and its agents produced numerous pages of paper and electronic documents and data that were reviewed by Class Counsel.  Class Counsel also informally interviewed the corporate representative of BDC Promotions, Inc.

On November 18, 2017, the Parties participated in an all-day mediation in Miami with mediator Rodney Max. At meditation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding.  The same day, the Parties filed a Notice of Settlement with the Court [DE #26]  Following further extensive negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

## III.   SUMMARY OF THE SETTLEMENT TERMS

The following is a summary of the material terms of the Settlement.

### a.  The Settlement Class

The proposed Settlement establishes a Settlement Class as follows:

All persons in the United States who had one or more Tallahassee Dodge Text

---

[2]  Federal Communications Commission, Small Entity Compliance Guide for the TCPA (dated May 13, 2013), https://apps.fcc.gov/edocs_public/attachmatch/DA-13-1086A1.pdf.

Messages sent to their cellular telephone number between July 27, 2017 and July 31, 2017.

Agreement ¶ 35.   The   following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) TDJC, as well as any parent, subsidiary, affiliate or control person of TDJC, and the officers, directors, agents, servants or employees of TDJC; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class member who has timely opted-out of this proceeding; and (6) Plaintiff's Counsel and their employees.

### b. Settlement Consideration

Pursuant to the Settlement, TDJC has agreed to establish a cash settlement fund for the benefit of Settlement Class Members in an amount of $850,000.00 ("Settlement Fund").  TDJC will deposit the Settlement Fund into an Escrow Account within 30 calendar days of Preliminary Approval.  Agreement ¶ 53.

### c. The Notice Program

Pending this Court's approval, Hilsoft Notifications will serve as the Notice Administrator, and will be responsible for administrating the Notice Program.  The Notice Program consists of four different components: (1) Mailed Notice, (2) Email Notice, (3) Online Notice, and (4) Long-Form Notice. Agreement ¶ 44.  The forms of the proposed Mailed Notice, Email Notice, and Long-Form Notices, agreed upon by Class Counsel and TDJC, subject to this Court's approval and/or modification, are attached to the Settlement Agreement as Exhibits 1-3.  The Notice Administrator has 17,044 telephone numbers that received at least one Tallahassee Dodge Text Messages and each telephone number will receive one or more forms of notice.  Ostrow Decl. ¶ 4.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for a Service Award; the date of the Final Approval Hearing; information regarding the Settlement Website where Settlement Class members may access the Agreement, and other important documents. Agreement ¶¶ 40-50.

### i. Mailed Notice

A majority of the members of the Settlement Class will receive Mailed Notice, which shall consist of a direct mail postcard that doubles as a Claims Form.  A copy of the Mailed Notice is

4

attached to the Settlement Agreement as Exhibit 1.  The Settlement Administrator will be provided with a large number of mailing addresses for Settlement Class members and will determine the remaining Settlement Class members' addresses by conducting a "Reverse Append" address look-up and comparing those addresses with the U.S. Post Office's National Change of Address database.  Individuals who receive Mailed Notice will have the option of mailing in the Claim Form attached to the Mailed Notice or visiting the Settlement Website (www.TDTCPAsettlement.com) to complete and submit an electronic Claims Form. Agreement ¶ 45.

In the event postcards are returned for insufficient addresses, the Notice Administrator will attempt to identify a better address for the Settlement Class member and will re-mail the postcard to that address ("Notice Re-mailing Process").  The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 45 days before the Final Approval Hearing.  Agreement ¶ 46.

### ii.  Email Notice

In addition to having their telephone numbers, TDJC has approximately 3,000 Settlement Class members' email addresses.  Those Settlement Class members will receive Email Notice in lieu of Mailed Notice, as this is more practicable for them, and to send mailed notice would increase costs resulting in lower Settlement Fund Payments.  Ostrow Decl. ¶ 5.  A copy of the Email Notice is attached to the Settlement Agreement as Exhibit 2.  The Email Notice will direct Settlement Class members to the Settlement Website (www.TDTCPAsettlement.com) where they will be able to complete and submit an electronic Claim Form.  The Email Notice Program shall be completed no later than 70 days before the Final Approval Hearing.  Agreement ¶ 48.

### iii.  Online Notice

For purposes of capturing Settlement Class members that for some reason did not receive Mailed Notice or Email Notice, the Settlement will be published through an Online Notice program.  The Online Notice program will be comprised of online banner advertisements and possibly social media.

Settlement Class members who see Online Notice will be directed to the Settlement Website (www.TDTCPAsettlement.com) where they will be able to fill out an electronic Claims Form.  The Online Notice Program shall be completed no later than 70 days before the Final Approval Hearing. Agreement ¶ 49.

### iv.  Long-Form Notice

The Mailed Notice, Email Notice, and Online Notice will all contain the address for the Settlement Website, www.TDTCPAsettlement.com.  On the website, Settlement Class members will find important documents and court filings, including the Long-Form Notice, which will contain more detail than the Mailed Notice, Email Notice, and Online Notice.  A copy of the Long Form Notice is attached to the Settlement Agreement as Exhibit 3.  Further, The Long Form Notice will be sent to all Settlement Class members who contact the Settlement Administrator by telephone or email and request a copy.  Agreement ¶¶ 33, 44.

### v.  Settlement Website & Toll-Free Telephone Number

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class members to obtain notice of, and information about, the Settlement. Agreement ¶ 33.  The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. *Id*. The Settlement Website will include an online portal to file Claim Forms, hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and other such documents as Class Counsel and counsel for TDJC agree to post or that the Court orders be posted on the Settlement Website.  These documents will remain on the Settlement Website at least until Final Approval.  *Id*.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries.  *Id*.

### d.  Claims Process

The Claims Process here is straightforward, easy to understand for Settlement Class members, and designed so that they can easily claim to their portion of the Settlement Fund. Ostrow Decl. ¶ 6.  Settlement Class members will make a claim by submitting a valid Claim Form to the Claims Administrator, which will then be evaluated for timeliness and completeness.  A copy of the Claim Form is attached to the Settlement Agreement as Exhibit 4.  Claim Forms may be sent in by hard copy or submitted electronically on the Settlement Website.  The Claim Form requires basic information from Settlement Class members: (1) name; (2) current address; (3) cellular telephone number(s) at which she or he was sent a Tallahassee Dodge Text Message; and (4) a current contact telephone number.  Once a Settlement Class member submits a Claim Form that is approved by the Settlement Administrator, the Settlement Class Member will then be eligible to automatically receive a cash payment.  In the event a Claim Form is deficient, in that

information is missing, inaccurate, or doesn't match up to a telephone number that received a Tallahassee Dodge Text Message, the Claims Administrator will attempt to contact the Settlement Class member and the Settlement Class member will have another opportunity to submit a valid Claim Form.  Untimely Claim Forms will be rejected and those Settlement Class Members will not receive a Settlement Fund Payment.  If those same Settlement Class Members also fail to timely opt-out, they will remain in the Settlement Class and their claims will be released. Agreement ¶ 40. Claim Forms can be submitted until 15 days following the Final Approval Order.

### e.   Allocation of the Settlement Fund Payments

Each Settlement Class Member who timely files a valid Claim Form shall automatically receive a cash distribution payable by check.  The amount of each cash distribution shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Members = Settlement Fund Payment.  Agreement ¶ 57.  Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id*.

### f.   Residual Funds Remaining After Initial Distribution

No residual funds shall revert back to TDJC.  Four months after the date the Settlement Administrator mails the first round of Settlement Fund Payments, any residual funds in the Settlement Fund shall be distributed as follows:

i.    First, on a *pro rata* basis to participating Settlement Class Members who received and cashed Settlement Fund Payments in the first round of distributions, to the extent feasible and practical in light of the costs of administering such subsequent payments, unless other specific reasons exist that would make such further distributions impossible or unfair; and

ii.   Second, in the event the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make individual distributions or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and TDJC shall file recommendations with the Court for distribution of the residual funds consistent with the American Law Institute, *Principles of Aggregate Litigation* **§** 3.07(c), together with supporting materials. The Court shall have the discretion to approve, deny, amend or modify, in whole or in part, the proposed recommendations for distribution of the residual funds in a

7

manner consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c).

 iii. All costs associated with the disposition of residual funds – whether through additional distributions to Settlement Class Members and/or through an alternative plan approved by the Court – shall be payable out of the Settlement Fund.

Agreement ¶ 58.

 **g. Settlement Administrator**

 Pending this Court's approval, Epiq Class Action & Claims Solutions, Inc., shall serve as the Settlement Administrator.  The Settlement Administrator's responsibilities include:

 i. obtaining from Class Counsel and TDJC cellular telephone information, and to the extent it is available, name, email, and address information, for Settlement Class members;

 ii. performing reverse telephone number look-ups by cellular telephone number to determine available associated physical addresses that might exist for any Settlement Class members for whom the Parties do not have email addresses, and verifying and updating the addresses received through the National Change of Address database, for the purpose of providing Mailed Notice;

 iii. providing Mailed Notice;

 iv. providing Email Notice (to the extent reasonably ascertainable);

 v. providing Long Form Notice to Settlement Class members;

 vi. effectuating the Online Notice program;

 vii. establishing and maintaining the Settlement website;

 viii. establishing and maintaining a post office box for requests for exclusion from the Settlement Class;

 ix. receiving, evaluating, and processing Claim Forms;

 x. advising Settlement Class members if their Claim Forms are deficient;

 xi. providing weekly reports about the Notice plan and number and identity of opt-outs (if any) to Class Counsel and TDJC's counsel;

 xii. establishing and maintaining an automated and toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries;

8

xiii.   responding to any Settlement Class member inquiries;

xiv.   processing all requests for exclusion from the Settlement Class;

xv.   at Class Counsel's request in advance of the Final Approval Hearing, preparing an declaration to submit to the Court that identifies each Settlement Class member who timely and properly requested exclusion from the Settlement Class;

xvi.   performing the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Class Counsel and TDJC, including, but not limited to, verifying that Settlement Funds have been distributed as required;

xvii.   distributing Settlement Fund Payments;

xviii.   repaying to TDJC the Settlement Fund in the event of a termination of the Settlement pursuant to this Agreement; and

xix.   performing the duties of Tax Administrator described in this Agreement, and any other Settlement-administration and tax-related function at the instruction of Class Counsel and TDJC.

Agreement ¶ 39.

### h.   Opt-Out and Objection Procedures

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator at the address designated in the Notice.  Settlement Class members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have against TDJC, subject to any defenses that TDJC may have against those claims.  The Settlement Agreement details the requirements to properly opt-out of the Settlement Class. Agreement ¶ 40.  A Settlement Class member must opt-out of the Settlement Class by the Opt-Out Period, which is 30 days prior to the Final Approval Hearing.  The Settlement Administrator will communicate any opt-out requests to Class Counsel, who will in turn report them to the Court as part of the Final Approval Hearing and those names will be referenced in an exhibit to the Final Approval Order. Agreement ¶ 41.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than 30 days prior to the Final Approval Hearing.  Pending Court approval, for an objection to be considered by the Court, it must include the following:

a.   the name of the Action;

9

b.  the objector's full name, address and telephone number;

c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.  all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.  the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.  the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.  a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections made by individuals or organizations represented by that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years the objector's counsel;

h.  any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

i.  the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.  a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing;

k.  a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and

l.  the objector's signature (an attorney's signature is not sufficient).

Agreement. ¶ 43.

### i.  <u>Release of Claims</u>

In exchange for the Settlement consideration, Plaintiff and all Settlement Class Members, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns,

beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged TDJC and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, agents, independent contractors, text messaging service providers, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters at any time from the beginning of the Class Period through the date an order preliminary approving the Settlement Agreement is entered by the Court, that were or could have been claimed, raised, or alleged in this Action to the extent they arise from or relate to text messages sent by or on behalf of TDJC. Agreement ¶ 62.

### j.   Class Counsel Fees and Expenses and Plaintiff's Service Award

TDJC has agreed not to oppose Class Counsel's request for attorneys' fees of up to 30% of the Settlement Fund and not to oppose Class Counsel's request for reimbursement of costs and expenses. TDJC has also agreed not to oppose an application for a Service Award for the Plaintiff up to $5,000.00. Agreement ¶ 65.  The Court should consider whether to grant or deny these awards separate and apart from its consideration of the fairness and reasonableness of the Settlement.

## IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a.   The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e).  As a matter of public policy, courts favor settlements of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-

deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* (citations omitted). In the second step, after notice to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id.*

The standard for granting preliminary approval is low—a proposed settlement will be preliminarily approved if it falls "within the range of possible approval" or, otherwise stated, if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (quoting MANUAL FOR COMPLEX LITIGATION § 1.46 at 62, 64-65 (1982)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness."). Thus, "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

Class Counsel and TDJC respectfully request that the Court take the first step in the process and grant Preliminary Approval of the Settlement. The Settlement is clearly within the range of reasonableness, and satisfies all standards for Preliminary Approval.

### b.  The Settlement Satisfies the Criteria for Preliminary Approval

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate. Ostrow Decl. ¶ 7.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial.  TDJC argues that Plaintiff's claims are unfounded, denies any liability, and has shown a willingness to litigate vigorously.  Ostrow Decl. ¶ 8.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with completing trial and any appellate review.  Ostrow Decl. ¶ 9.

### c.   The Settlement Agreement is the Product of Good Faith, Informed and Arm's Length Negotiations

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977);[3] *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  Ostrow Decl. ¶ 10.  The Parties engaged in formal mediation before an experienced and respected mediator. The mediation and the negotiations were arm's-length and extensive. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Ostrow Decl. ¶ 11 and Exhibit 1.  Class Counsel zealously represented their client throughout the litigation, and throughout the discovery process, which included review of numerous pages of documents and electronic data.  Ostrow Decl. ¶ 12.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

In negotiating this Settlement, Class Counsel had the benefit of years of experience in litigating and settling complex class actions and a familiarity with the facts of the Action. Ostrow Decl. ¶ 13 and Exhibit 1. As detailed above, Class Counsel conducted a thorough analysis of Plaintiff's claims and engaged in extensive discovery with TDJC and third parties. *Id*. ¶ 14. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations. *See Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery); Ostrow Decl. ¶ 15.

### d.  <u>The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable</u>

The Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

#### i.  <u>Likelihood of Success at Trial</u>

Class Counsel are confident in the strength of Plaintiff's case, but are also pragmatic in their awareness of the various defenses available to TDJC, and the risks inherent in trial and post-judgment appeal. Ostrow Decl. ¶ 16. The success of Plaintiff's claims, turn on questions that would arise at summary judgment, trial and during an inevitable post-judgment appeal. Further, it still remains unclear whether Plaintiff would be able to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation. Ostrow Decl. ¶ 17.

Even if Plaintiff and the Settlement Class prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members, without further delay.

#### ii.  <u>Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement is Fair</u>

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for

the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses.  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $850,000.00 cash recovery in this case is more than reasonable, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement including, but not limited to, the pending motion for class certification, an anticipated motion to compel class-wide arbitration, a motion for summary judgment, *Daubert* motions, trial as well as appellate review following a final judgment.  Ostrow Decl. ¶ 18.

There can be no doubt that this Settlement is a fair and reasonable recovery for the in light of TDJC's defenses, the uncertainty of class certification, and the challenging and unpredictable path of litigation Plaintiff and all Settlement Class members would face absent a settlement. Ostrow Decl. ¶ 19.

### iii.   **Complexity, Expense and Duration of Litigation**

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable.  Thus, the Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  Ostrow Decl. ¶ 20.

### iv.   **Stage of Proceedings**

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached only after discovery, including the production and review of numerous pages of documents and electronic data produced by TDJC and third-parties.  As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and

weaknesses of Plaintiff's claims and prospects for success at trial and on appeal.  Ostrow Decl. ¶ 21.

### e.  Certification of the Settlement Class is Appropriate

For settlement purposes, Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 35 of the Agreement. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt-out, and of the date, time and place of the Final Approval Hearing. *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 17,044 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on

TDJC's text messaging marketing program – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff is typical of absent Settlement Class members because he received a Tallahassee Dodge Text Message and claims to have suffered the same injuries, and because they will all benefit from the relief provided by the Settlement.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Ostrow Decl. ¶ 22, Exhibit 1. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially

outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### f.   The Court Should Approve the Proposed Notice Program

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Lit*. § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt-out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice program satisfies all of these criteria.  As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement.  It will advise Settlement Class members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's Attorneys' fee application and/or request for Service Award, or for opting-out of the Settlement, and how to obtain additional information about the Settlement.   The Notice Program is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Notice Program and the form and content of the Notices.

### V.   Proposed Schedule of Events

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing.  Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.  Class Counsel propose the following schedule:

| Event | Date |
|---|---|
| Deadline for Completion of Mailed Notice Program | 45 days before the Final Approval Hearing |
| Deadline for the Email Notice Program | 70 days before the Final Approval Hearing |
| Deadline for the Online Notice Program | 70 days before the Final Approval Hearing |
| Deadline for filing papers in support of Final Approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses | 45 days prior to the Final Approval Hearing |
| Deadline for opting-out of Settlement and submission of objections | 30 days prior to the Final Approval Hearing |
| Responses to Objections | 15 days prior to the Final Approval Hearing |
| The Final Approval Hearing | Approximately 90 days after Preliminary Approval |
| The last day that Settlement Class members may submit a Claim Form to the Settlement Administrator. | 15 days after the Final Approval Hearing |

## VI.  Conclusion

Based on the foregoing, Plaintiff and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice program set forth in the Agreement and approve the form and content of the Notices and Claim Form, attached to the Settlement Agreement as Exhibits 1-4; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint Plaintiff, Seth F. Masson, as Class Representative; (6) appoint as Class Counsel the law firms and attorneys listed in paragraph 5 of the Agreement; and (7) schedule a Final Approval Hearing on May 7, 2018.  A Proposed Preliminary Approval Order is attached hereto as *Exhibit C*.

Dated: January 23, 2018.

Respectfully submitted,

By: /s/ Jeff Ostrow
Jeff Ostrow (Florida Bar No. 121452)
Scott A. Edelsberg (Florida Bar No. 100537)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Email:  ostrow@kolawyers.com
Email:  edelsberg@kolawyers.com

Manuel S. Hiraldo, Esq.
HIRALDO P.A.
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33301
Email:  mhiraldo@hiraldolaw.com
*Attorneys for Plaintiff and all others similarly situated*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

By: /s/ Jeff Ostrow
Jeff Ostrow (Florida Bar No. 121452)
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Email:  ostrow@kolawyers.com
*Attorneys for Plaintiff
and all others similarly situated*