**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:17-cv-22967-FAM**

SETH F. MASSON, individually
and on behalf of all others similarly situated,                    **CLASS ACTION**

     Plaintiff,                                                                                     **JURY TRIAL DEMANDED**

v.

TALLAHASSEE DODGE CHRYSLER
JEEP, LLC a Florida limited liability company,

     Defendant.
_____/

**PLAINTIFF'S AND CLASS COUNSEL'S MOTION FOR FINAL APPROVAL OF**
**CLASS SETTLEMENT AND APPLICATION FOR SERVICE AWARD, ATTORNEYS'**
<u>**FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**</u>

During the course of vigorously contested litigation, Plaintiff on behalf of approximately 16,986 consumers who received unauthorized marketing text messages from Defendant, Tallahassee Dodge Chrysler Jeep, LLC ("TDJC"), Plaintiff, and Class Counsel negotiated the Settlement Agreement and Release, attached as *Exhibit A* ("Agreement" or "Settlement").[1]  The Settlement – which consists of TDJC's agreement to pay $850,000 in cash – is a great result for the Settlement Class.  *See* Declaration of Scott Edelsberg ¶ 2, attached as *Exhibit B* ("Edelsberg Decl.").

Plaintiff and Class Counsel now seek Final Approval of the Settlement.  Class Counsel also request that the Court award a Service Award to the Class Representative, whose willingness to represent the Settlement Class and participation in the Action helped make the Settlement possible. Finally, Class Counsel request that the Court award attorneys' fees and approve the reimbursement of certain expenses incurred in prosecuting the Action.

## I.   INTRODUCTION

TDJC utilized the services of third-party, BDC Promotions, Inc., to promote upcoming specials or deals, which included sending text messages. Plaintiff received a text message from TDJC on July 27 asking him to make an appointment to explore trade-in offers and attractive finance rates.  In addition to Plaintiff, BDC Promotions, Inc., sent an identical or similar text message to approximately 17,520 other mobile phone numbers which, Class Counsel contends, was done using highly advanced autodialing technology.

Plaintiff sued TDJC alleging that TDJC violated the TCPA by sending the above described text message to him and approximately 16,986 other consumers. TDJC denied liability and asserted affirmative defenses.  The parties engaged in formal and informal discovery practice with the hopes of exploring an early resolution.  The Court issued a Scheduling Order, [DE #18], that established early deadlines for the completion of all discovery and the filing of all pretrial motions. During the course of conducting discovery, the parties participated in mediation with Rodney Max, a well-respected mediator in South Florida. At mediation, the Parties agreed to settle the Action to avoid the risks and uncertainties associated with continued litigation.

---

[1] All capitalized terms used herein have the same meanings as those defined in the Agreement.

On January 26, 2018, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of a motion for Final Approval of the Settlement.

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) appoint the Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph 5 of the Agreement; (5) approve the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.   MOTION FOR FINAL APPROVAL

### A.   <u>Procedural History</u>

On August 4, 2017, Plaintiff initiated this litigation against TDJC in the United States District Court for the Southern District of Florida, alleging violations of the TCPA, and seeking, *inter alia,* monetary damages. [DE #1]. After seeking a brief extension of time, [DE #6], TDJC filed an Answer and Affirmative Defenses. [DE #12].

On September 28, 2017, after conducting a telephonic meet and confer the Parties submitted Joint Scheduling Report. [DE #15].   On October 10, 2017, the Court entered a Scheduling Order and Order Referring Case to Mediation. [DE #18, 19].

Discovery commenced in October 2017.   Class Counsel served written discovery and documents requests and subpoenas for documents and depositions on TDJC's mobile marketer, BDC Promotions, Inc.

In response, TDJC and its agents produced numerous pages of paper and electronic documents and data that were reviewed by Class Counsel.   Class Counsel also informally interviewed the corporate representative of BDC Promotions, Inc.

On November 18, 2017, the Parties participated in an all-day mediation in Miami with mediator Rodney Max. At meditation, the Parties reached an agreement to settle the Action, and executed a term sheet memorializing their understanding.  The same day, the Parties filed a Notice of Settlement with the Court [DE #26]  Following further extensive negotiations and discussions, the Parties resolved all remaining issues, culminating in the signing of the Settlement Agreement.

### B.      Summary of the Settlement Terms

The Settlement terms are detailed in the Agreement attached.  The following is a summary of its material terms.

#### 1.      The Settlement Class

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure.  The Settlement Class is defined as:

> All persons in the United States who had one or more Tallahassee Dodge Text
> Messages sent to their cellular telephone number between July 27, 2017 and July
> 31, 2017.

Agreement ¶ 35.

#### 2.      Monetary Relief

The Settlement required TDJC to deposit $850,000 into the Escrow Account, which was timely done by TDJC.  Edelsberg Decl. ¶ 3. The Settlement Fund will be used to: (i) distribute Settlement Fund Payments to Settlement Class Claimants; (ii) pay any Court-ordered attorneys' fees and costs awarded to Class Counsel; (iii) pay any Court-ordered Service Award to the Plaintiff;  (iv) pay all Taxes; (v) pay any costs of the Notice Administrator and Settlement Administration; (vi) distribute remaining Settlement Funds in a second distribution to Settlement Class Claimants; (vii) pay any additional fees or expenses not specifically enumerated in paragraph 56 of the Agreement, subject to approval of Class Counsel and TDJC.  Agreement ¶ 56, a-f.

In order to receive a portion of the Settlement Fund, Settlement Class members are required to complete an online or paper Claim Form.  Claim Forms were mailed by U.S. Mail or by email to each Settlement Class member, and are available at the Settlement Website.  Each Settlement Class member who timely files a valid Claim Form shall become a Settlement Class Claimant and thereafter automatically receive a Settlement Fund Payment payable by check. As of March 22, 2018, the Settlement Administrator has received a total of 228 Claim Forms.

The amount of each Settlement Fund Payment shall be determined by the following formula: Net Settlement Fund divided by total number of Settlement Class Claimants.  Net Settlement Fund = Settlement Fund minus Settlement Costs.  Agreement ¶ 57.  Settlement Class Claimants will be sent their Settlement Fund Payments to the address they submitted on their Claim Form no later than 45 days following the Effective Date. *Id*.

3

None of the Settlement Funds shall revert back to TDJC.  Four months after the date the Settlement Administrator mails the first round of Settlement Fund Payments, any remaining funds in the Settlement Fund shall be distributed as follows:

    i.      First, on a *pro rata* basis to participating Settlement Class Claimants who received Settlement Fund Payments in the first distribution, to the extent feasible and practical in light of the costs of administering such subsequent payments, unless other specific reasons exist that would make such further distributions impossible or unfair; and;

    ii.      Second, in the event the costs of preparing, transmitting and administering such subsequent payments are not feasible and practical to make individual distributions or other specific reasons exist that would make such further distributions impossible or unfair, Class Counsel and TDJC shall file recommendations with the Court for distribution of the residual funds consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c), together with supporting materials.  The Court shall have the discretion to approve, deny, or modify, in whole or in part, the proposed recommendations for distribution in a manner consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c).

    iii.      All costs associated with the disposition of remaining funds – whether through additional distributions to Settlement Class Claimants and/or through an alternative plan approved by the Court – shall be payable out of the Settlement Fund. Agreement ¶ 58.

### 3.    Class Release

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released TDJC from claims related to the subject matter of the Action.  The detailed release language is found in Section XII of the Agreement.  Agreement ¶ 62.

### 4.    Settlement Notice

The Notice Program was designed to provide the best notice practicable, and was tailored to take advantage of the information TDJC had available about Settlement Class members. Agreement ¶¶ 49-59.  The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement.  *See* Declaration of Cameron Azari ¶¶ 32-35, attached as *Exhibit C* ("Azari Decl."); Edelsberg Decl. ¶ 4.   The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable

requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. Azari Decl. ¶¶ 36-39.

        **5.**        **Service Award**

Class Counsel are entitled to request, and TDJC will not oppose, a Service Award of $2,500 for the Class Representative, Seth Masson. Agreement ¶ 65. If the Court approves it, the Service Award will be paid from the Settlement Fund, and will be in addition to any other relief to which the Class Representative is entitled as a Settlement Class Member. *Id.* The Service Award will compensate Class Representative Masson for his time and effort in the Action, and for the risks he undertook in prosecuting the Action against TDJC. Edelsberg Decl. ¶ 5.

        **6.**        **Attorneys' Fees and Costs**

Class Counsel are entitled to request, and TDJC will not oppose, attorneys' fees of up to 30% of the Settlement Fund, plus reimbursement of litigation costs and expenses. Agreement ¶ 63. The Parties negotiated and reached agreement regarding fees and costs only after agreeing on all other material terms of the Settlement. Agreement ¶ 66; Edelsberg Decl. ¶ 6.

        **C.**        <u>**Argument**</u>

Court approval is required for settlement of a class action. Fed. R. Civ. P. 23(e). The federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. Unit B 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

        **1.**        **The Court Has Personal Jurisdiction Over the Settlement Class Because the Settlement Class Received Adequate Notice and an Opportunity to Be Heard.**

In addition to having personal jurisdiction over the Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they

received the requisite notice and due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig*., 148 F.3d 283, 306 (3d Cir. 1998).

a.    **The Best Notice Practicable Was Furnished.**

The Notice Program was comprised of four parts: (1) direct mail postcard notice ("Mailed Notice") to all identifiable Settlement Class members; (2) email notice ("Email Notice") designed to reach those Settlement Class members for whom TDJC maintained email addresses; (3) online notice comprised of banner advertisements and a press release ("Online Notice"); and (4) a "Long-Form" notice with more detail than the direct mail or email notices, that has been available on the Settlement Website and via mail upon request.  Agreement, Section VI; Azari Decl. ¶¶ 15-16.

Each facet of the Notice Program was timely and properly accomplished.  Azari Decl. ¶ 39.  The Notice Administrator received data from TDJC that identified the names, last known addresses, and some emails of 16,986 identifiable Settlement Class members.  The Notice Administrator ran the addresses through the National Change of Address Database and mailed postcards to 9,263 Settlement Class members, and emailed and additional 7,723 Settlement Class members.  *Id*. at ¶¶ 17-22.  The Notice Administrator also purchased online banner advertisements, along with sponsored search listing, on the *Google Ad Network*, *Yahoo! Ad Network,* and Bing, which secured 6.1 million adult impressions.  *Id*. at ¶¶ 23-24.  The Notice Administrator performed follow up research and is continuing to attempt, prior to the Final Approval Hearing, to re-mail postcards to Settlement Class members whose initial postcard notices were returned by the postal service.  *Id*. at ¶ 22.  The Notice Administrator also mailed Long Form notices in response to requests from Settlement Class members.  *Id*. at ¶ 28.  In sum, between the Mailed Notice, Email Notice, Online notice, and Long Form Notice, approximately 90% of the Settlement Class received notice. *Id*. at ¶ 37.

The Notice Administrator also established the Settlement Website, www.TDTCPAsettlement.com, which went live on February 14, 2018.  The Long Form Notice, along with other key pleadings, have been and will continue to be available on the Settlement Website or upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement.  Azari Decl. ¶¶ 25-27.  As of March 22, 2018, the Settlement Website had 5,182 unique visitors with a total of 7,547 page views. *Id*. at ¶ 26.  In addition, a toll-free number, 888-551-1722, was established and has been operational

since February 14, 2018.  *Id.* at ¶ 28.  By calling, Settlement Class members are able listen to answers to frequently asked questions and request a copy of the Long Form Notice.  *Id.*  As of March 22, 2018, the toll free number had handled 29 calls for a total of 109 minutes.  *Id.*

        **b.**       **The Notice and Notice Program Were Reasonably Calculated to Inform the Settlement Class of Their Rights.**

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment."  *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class, described the release provided to TDJC under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  It also notified Settlement Class members that a final judgment would bind them unless they opted-out, and told them where they could get more information – for example, at the Settlement Website that has a copy of the Agreement, as well as other important documents.  Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to 30% of the Settlement Fund, plus expenses, and a Service Award for the Class Representative.  Hence, Settlement Class members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15); *see* Azari Decl. ¶¶ 37-40.

As of March 22, 2018, the Settlement Administrator had received no requests for exclusions and no objections to the Settlement had been filed.  Edelsberg Decl. ¶ 7.  The opt-out and objection period both end on April 6, 2018.

        **2.**       **The Settlement Should Be Approved as Fair, Adequate and Reasonable. [2]**

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).  A

---

[2] As of March 22, 2019, there have been no objections to the Settlement or Class Counsel's application for attorneys' fees.

settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."  *In re Lorazepam & Clorazepate Antitrust Litig*., MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial."  *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

(1)      the existence of fraud or collusion behind the settlement;
(2)      the complexity, expense, and likely duration of the litigation;
(3)      the stage of the proceedings and the amount of discovery completed;
(4)      the probability of the plaintiffs' success on the merits;
(5)      the range of possible recovery; and
(6)      the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986.  The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a.      There Was No Fraud or Collusion.

The contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *See, e.g*., *In re Sunbeam Sec. Litig*., 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties").

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations.  Class Counsel and TDJC engaged in formal mediation with Rodney Max.  All negotiations were arm's-length and extensive.  Edelsberg Decl. ¶ 8; *see also Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

8

b.      **The Settlement Will Avert Years of Complex and Expensive Litigation.**

The claims and defenses are complex; litigating them has been both difficult and time-consuming, and recovery by any means other than settlement would require additional years of litigation. Edelsberg Decl. ¶ 9.  *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to a Settlement Class which includes 16,986 Settlement Class Members.  As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id*. at 560 (alterations in original). Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

c.      **The Factual Record Is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment.**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 813 (3d Cir. 1995).  At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations."  *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of targeted discovery.  Edelsberg Decl. ¶ 10.  Specifically, Class Counsel reviewed numerous pages of documents and electronic

data, and thoroughly investigated a relevant third-party.  Plaintiff also spent considerable time researching and navigating Defendant's numerous defenses, including potential arbitration issues. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate with the strengths and weaknesses of Plaintiff's claims and Defendant's defenses through the conclusion of the litigation, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis.  Edelsberg Decl. ¶ 11.

### d.  Plaintiff and the Class Still Faced Significant Obstacles to Prevailing.

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement.  *Domestic Air*, 148 F.R.D. at 314.  Class Counsel believe that Plaintiff had a strong case against Defendant. Edelsberg Decl. ¶ 12.  Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement.  *Id*.  This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, class certification, arbitration issues, a motion for summary judgment, *Daubert* motions, trial, as well as appellate review following a final judgment.  *Id*.  Notably, the likely crux of Defendant's intended motion for summary judgment was that the software Defendant used to transmit text messages was not an autodialer as defined by the TCPA, and therefore, TDJC could not be held liable under the TCPA for the text messages received by Plaintiff and members of the class.

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval.  Edelsberg Decl. ¶ 13.  The uncertainties and delays from this process would have been significant.  *Id*.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot but a fair compromise.  *See, e.g*., *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

e.   **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery.**

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*.

Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Edelsberg Decl. ¶ 14. Through this Settlement, Plaintiff secured a recovery of that equates to approximately $50 per Settlement Class Member. Edelsberg Decl. ¶ 15. As of the date of this Motion, there are approximately 228 Settlement Class Claimants, which means each Settlement Class Claimant will likely receive in excess of the $50 minimum. *Id*. ¶ 16. Settlement Class Members can continue to submit Claim Forms up and through May 22, 2018. Pursuant to the TCPA, each injured Settlement Class member could have received $500.00 for each violative text message received upon a successful verdict at trial.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Edelsberg Decl. ¶ 17; *See Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, LEXIS 806549, at *7 (N.D. Ill. 2016) (TCPA case providing for a $52.50 payout for each claimant); *Arthur v. Sallie Mae, Inc.*, 2012 U.S. Dist. LEXIS 132413 (W.D. Wash. Sept. 17, 2012) (approving TCPA settlement where each class claimant estimated to receive between $20 and $40).

f.   **The Opinions of Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval.**

Class Counsel strongly endorse the Settlement. Edelsberg Decl. ¶ 18. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren*, 693 F. Supp. at 1060; *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud,

11

collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

There has been no opposition to the Settlement. Edelsberg Decl. ¶ 19. This is another indication that the Settlement Class is clearly satisfied with the Settlement.  Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co*., 211 F.R.D. 457, 467 (S.D. Fla. 2002).

### 3.      The Court Should Certify the Settlement Class.

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 16,986 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on TDJC's text messaging marketing program – that are common to the Settlement Class, that are

alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class members because he received a TDJC Marketing Text and suffered the same injuries as them and because they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. Edelsberg Decl. ¶ 20, Exhibit 1. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions. Class Counsel devoted substantial time and resources to vigorous litigation of the Action.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it

promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III.    APPLICATION FOR SERVICE AWARD

Pursuant to the Settlement, Class Counsel respectfully request, and Defendant does not oppose, a Service Award for the Class Representative in the amount of $2,500.  Agreement ¶ 65. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006).  "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010).

The relevant factors include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g*., *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These factors, as applied to this Action, demonstrate the reasonableness of the requested Service Award to Plaintiff.  Edelsberg Decl. ¶ 21. Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and locating and forwarding responsive documents and information. Plaintiff was also prepared to devote additional time to deposition and to be available for trial, if necessary. Edelsberg Decl. ¶ 22.

The Service Award of $2,500 is less than 0.003% of the Settlement Fund, a ratio that falls well below the range of what has been deemed to be reasonable. *Id.* at ¶ 24; s*ee, e.g*., *Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56% of a $56.6 million settlement).  The Service Award requested here is reasonable.

## IV.    APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, and notwithstanding that the Agreement allows Class Counsel to ask for up to 30%, Class Counsel respectfully request an award of attorneys' fees equal to 25% of the $850,000 Settlement Fund.  Class Counsel also request reimbursement of limited out-of-pocket

costs and expenses totaling $3,551.25 incurred in connection with the prosecution of the Action and in connection with the Settlement.  Edelsberg Decl. ¶ 24.  Class Counsel and Defendant negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms.  *Id*. ¶ 26. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable and respectfully requests that it be approved by the Court.

A.      **The Law Awards Class Counsel Fees From the Common Fund Created Through Their Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts."  *In re Gould Sec. Litig*., 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333. Courts have also recognized that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons, and deter future misconduct of a similar nature.

In the Eleventh Circuit, class counsel are awarded a percentage of the funds obtained through a settlement.  In *Camden I* – the controlling authority regarding attorneys' fees in common-fund class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

The Court has discretion in determining the appropriate fee percentage.  "There is no hard

15

and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

(1)     the time and labor required;
(2)     the novelty and difficulty of the relevant questions;
(3)     the skill required to properly carry out the legal services;
(4)     the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5)     the customary fee;
(6)     whether the fee is fixed or contingent;
(7)     time limitations imposed by the clients or the circumstances;
(8)     the results obtained, including the amount recovered for the Clients;
(9)     the experience, reputation, and ability of the attorneys;
(10)    the "undesirability" of the case;
(11)    the nature and the length of the professional relationship with the clients; and
(12)    fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

### 1.     The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Edelsberg Decl. ¶ 25. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id.* at ¶ 26. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* at ¶ 27. Time and resources were also dedicated to conducting discovery. *Id.* at ¶ 28. Class Counsel devoted substantial time to reviewing

numerous pages of documents and electronic data produced by Defendant and third-parties. *Id.* Class Counsel also served written formal discovery and engaged in informal discovery. *Id.*

Settlement negotiations consumed further time and resources. Edelsberg Decl. ¶ 29. The initial mediation session required substantial preparation and document review. Finally, a significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order. All of this work consumed a substantial amount of time. *Id.* ¶ 30.

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Edelsberg Decl. ¶ 31. The time and resources devoted to this Action readily justify the requested fee.

### 2.     The Issues Involved Were Novel and Difficult, and Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This Court witnessed the quality of our legal work, which conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Our work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues presented here, such as analyzing class certification issues. Class Counsel possess these attributes, and their participation added value to the representation of this Settlement Class. Edelsberg Decl. ¶ 32. The record demonstrates that the Action involved complex and novel challenges, which Class Counsel met at every juncture. *Id.* at ¶ 33.

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654. Throughout the litigation, Defendant was represented by extremely capable counsel. They were worthy, highly competent adversaries. Edelsberg Decl. ¶ 38; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law

firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3.     Class Counsel Achieved a Successful Result.

Given the significant litigation risks Class Counsel faced, the Settlement represents a successful result.  Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit of approximately $50.00.  Edelsberg Decl. ¶ 34.

### 4.     The Claims Presented Serious Risk.

The Settlement is particularly noteworthy given the combined litigation risks.  Edelsberg Decl. ¶ 35. As discussed, Defendant raised substantial and meritorious defenses. Consideration of the "litigation risks" factor under *Camden I* "recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk.  Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case.  All of this and more is enveloped by the term 'undesirable.'" *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."  *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset.  Edelsberg Decl. ¶ 36.  Defendant was confident in their opposition to Plaintiff's class certification argument, and was working towards moving for summary judgment. *See* Section D.2.d., *supra* (Plaintiff's summary of Defendant's numerous defenses). The $850,000 cash recovery obtained through the Settlement is substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement.  Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims.

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to certify a class and establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal.  The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of litigation Plaintiff and the certified class would have faced absent the Settlement.  Edelsberg Decl. ¶ 37.

5. **Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.**

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Edelsberg Decl. ¶ 38. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Edelsberg Decl. ¶ 39. The progress of the Action to date shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action, we remain completely uncompensated for the time invested in the Action, in addition to the expenses we advanced. Edelsberg Decl. ¶ 40. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

6. **The Requested Fee Comports with Fees Awarded in Similar Cases.**

Counsel's requested fee of 25% of the Settlement Fund is within the range of fees typically awarded in similar cases. Edelsberg Decl. ¶ 41. Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 25% fee is well within the range of reason under the factors listed by the *Camden I*. "[F]ederal district courts across the country have, in the class action settlement context, *routinely* awarded class counsel fees in excess of the 25 percent 'benchmark.'" *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added) (awarding fees equaling 31.33%); *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards).

Class Counsel's fee request falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See*

*Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this Circuit and elsewhere. *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (40S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund).

Consequently, the attorneys' fee requested is appropriate and should be awarded.

### 7.   The Expense Request Is Appropriate.

Class Counsel also request reimbursement for a total of $3,551.25 in litigation costs and expenses. Edelsberg Decl. ¶ 42. This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement. *Id.*

## V.   CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as *Exhibit D*; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Seth Masson as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph 5 of the Agreement; (5) approve the requested Service Award in the amount of $2,500; (6) award Class Counsel attorneys' fees in the amount of 25% of the Settlement Fund, and the reimbursement of expenses in the amount of $3,551.25; and (7) enter Final Judgment dismissing the Action with prejudice.

Dated: March 23, 2018.

Respectfully submitted,

**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**

*/s/ Scott A. Edelsberg*
Scott A. Edelsberg
Florida Bar No. 100537
edelsberg@kolawyers.com
Jeff Ostrow
Florida Bar No. 121452
ostrow@kolawyers.com
1 W. Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
Facsimile: 954-525-4300

**HIRALDO P.A.**
 Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713
*Counsel for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of March, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *<u>/s/ Scott A. Edelsberg</u>*